UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
DONA J. JACKSON,

                          Plaintiff,              06-CV-6364

             v.                                   **ORDER**

NEW YORK STATE, et al.,

                          Defendants.
_____

## INTRODUCTION

        Plaintiff Dona J. Jackson ("Plaintiff"), proceeding *pro se*,[1]
brings this action pursuant to 42 U.S.C. § 1983 and New York state
law alleging various deprivations of her constitutional rights and
state law, relating to her allegedly antagonistic relationship with
the New York State Police and various other law enforcement
agencies, judges, and district attorneys since 1993.  In this
lawsuit, Plaintiff formally names as defendants, New York State,

---

[1]Plaintiff was initially represented by counsel in the Northern District of New York, but on July 29, 2004, her attorney's motion to withdraw was granted by Magistrate Judge David E. Peebles.  Plaintiff then represented herself in the Northern District and in this District after the case was transferred here by Judge Peebles on June 30, 2006.  Plaintiff then filed several duplicative, exceedingly long and combative motions in this Court, after previously neglecting to prosecute her case for several years. Consequently, the Court directed Magistrate Judge Marian W. Payson to hold a hearing to determine, *inter alia*, whether Plaintiff should be appointed counsel. Plaintiff indicated at the hearing that she wanted to continue to represent herself. (Docket No. 166 at 3.)  While Plaintiff is now proceeding *pro se*, which requires the Court to consider her pleadings liberally, the Court notes that Plaintiff is an experienced litigant who is familiar with the rules and procedures in federal court, having participated in several lawsuits in the Western District of New York (Civil Case Nos. 02-CV-6204; 01-CV-6382; 02-CV-6536; 03-CV-6179); she has refused the appointment of counsel to assist her with the drafting of pleadings and motions; and at the outset of this litigation she was represented by counsel who presumably assisted her in drafting several of the complaints filed in this action.

the New York State Police ("NYSP"), former NYSP Superintendent, James W. McMahon, NYSP Troop E officers, troopers and employees, sixteen individual NYSP officers and investigators and 65 unnamed Jane and John Does (collectively, "Defendants"). Plaintiff alleges that these defendants as well as many other "co-conspirators" and "terrorists" have engaged in a pattern of unlawful and unconstitutional conduct since early 1993 including, *inter alia*, at least eleven false arrests, several malicious prosecutions, assault and battery, fraud, perjury and First Amendment retaliation. The Court now considers Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint.

## PROCEDURAL BACKGROUND

This case has a long and tortured history and, despite being filed in the Northern District of New York on May 9, 2003, it has failed to progress past the pleading stage for the last nine years. (NDNY Docket Sheet, Civil Docket No. 129, Attachment 2). In addition to her original complaint, Plaintiff filed three amended complaints in the Northern District of New York. The Defendants moved to dismiss the Second Amended Complaint on February 2, 2005, and Plaintiff cross-moved for the immediate production of documents and to enjoin the New York State Attorney General from representing the Defendants. Defendants motion was granted-in-part and denied-in-part, and Plaintiff's motion was denied in all respects on August 16, 2005 by Senior District Judge Howard G. Munson.

Specifically, Judge Munson dismissed Plaintiff's claims arising under the Racketeer Influenced and Corrupt Organizations Act ("RICO") and her claims for conspiracy, but he found that she could proceed with the remaining claims, even those that were seemingly time-barred, as she had alleged a "continuing violation."   See Jackson v. New York State, 381 F.Supp.2d 80 (N.D.N.Y. 2005).

Following Judge Munson's decision, the Defendants answered the Second Amended Complaint. However, Defendants then learned that Plaintiff had served a different complaint on the Defendants than that which was filed with the Court.   (NDNY Docket, 10/28/2005.) Plaintiff then filed a motion to file a Third Amended Complaint. The Defendants' initially opposed the motion, but later stipulated to the filing of the Third Amended Complaint.  The Defendants also notified the Court on February 27, 2006 that Plaintiff had filed a related case in the Western District of New York almost two years prior on August 8, 2001 (Jackson v. Axsmith, Civil No. 01-CV-6382 ("Axsmith"), in which she alleged many of the same claims and named several of the same defendants.  Axsmith was dismissed for Plaintiff's failure to prosecute.  (NDNY Docket 2/27/2006.)

In the meantime, in addition to her motion to amend, Plaintiff filed several other motions requesting that the Court (1) compel discovery, (2) disqualify the Assistant Attorney General assigned to the case from representing the Defendants, and (3) appoint a special prosecutor and/or convene a grand jury to investigate her

allegations.   The Defendants cross-moved to transfer the case to the Western District of New York.   On June 30, 2006, Magistrate Judge David E. Peebles issued an order denying all of Plaintiff's requests and transferring this case to this District. Judge Peebles noted that this District would be better equipped to resolve the impact of the dismissal of the <u>Axsmith</u> case on Plaintiff's claims in this case, as the <u>Axsmith</u> case "involv[ed] many of the same claims and operative facts, as well as some of the same defendants." (Docket No. 129-2 at 18.) Accordingly, on July 21, 2006 the case was transferred to this Court.

This case has had a similarly circuitous history in this District.   Upon transfer, Plaintiff filed a "combined motion" in which she requested, *inter alia*, that this Court (1) reconsider and/or vacate Judge Peebles transfer order, (2) enjoin the NYS Attorney General and the assigned Assistant Attorney General from representing the Defendants, (3) order a default against the Defendants for failing to answer the Third Amended Complaint, (4) empanel a grand jury and/or a special prosecutor to investigate her case, and (5) disqualify Judge Peebles from presiding over this case.  On February 6, 2007, this Court denied Plaintiff's motion in its entirety. The Court specifically noted that several of Plaintiff's requests were improper and/or had already been denied in the Northern District, and that Plaintiff's request for a default was premature, as it appeared that the Third Amended

Complaint had never actually been served on the Defendants.[2]   The
Court also dismissed Plaintiff's claims for conspiracy and RICO
violations, which had previously been dismissed in the Northern
District.   Plaintiff filed an interlocutory appeal of this order,
which was partially dismissed for lack of jurisdiction and
otherwise dismissed for lack of merit.   (Docket No. 143.)

        Having not heard from the Plaintiff since she filed her
"combined motion" in 2006, on April 18, 2011, this Court issued an
Order to Show Cause pursuant to Federal Rule of Civil Procedure
41(b)("Rule 41(b)"), why this case should not be dismissed for
Plaintiff's failure to prosecute. Plaintiff responded by filing a
response and two additional lengthy and argumentative motions,
which sought much of the same relief that had already been denied
by this Court and by Judge Munson and Judge Peebles in the Northern
District on multiple occasions. Plaintiff was warned that
continuing to file repetitive and frivolous motions may result in
sanctions under Federal Rule of Civil Procedure 11 ("Rule 11").
(Docket No. 154.)

        This Court then referred the matter to Magistrate Judge Marian
W. Payson to hold a status conference to facilitate moving the case
forward and to determine whether counsel should be appointed for
the Plaintiff.  As discussed in footnote 1, Plaintiff refused the

---

[2]Despite being informed that she must properly serve the Third Amended
Complaint, the docket does not indicate that Plaintiff has done so.

appointment of counsel, but she continued to file numerous frivolous motions with the Court. (Docket No. 163, 166, 176.) She has been repeatedly warned by the Court that the filing of such motions may result in sanctions under Rule 11, including the dismissal of her case for her failure to follow the orders of this Court.

Then, on November 16, 2011, Defendants filed the instant Motion to Dismiss Plaintiff's Third Amended Complaint.[3] (Docket No. 167.)  Plaintiff did not respond to the instant motion, but instead filed another duplicative, lengthy (approximately 300 pages) and combative motion for miscellaneous relief on December 27, 2011. This Court denied the motion for Plaintiff's failure to follow the orders of this Court regarding the filing of motions. (Docket No. 177.)

Defendants' Motion to Dismiss raises, for the first time, the issue of res judicata, and it also raises several issues that were previously decided by Judge Munson in his Order denying Defendants' Motion to Dismiss the Second Amended Complaint.  The Court will address the issue of res judicata and, as discussed in more detail below, the Court will also re-examine the statute of limitations issues previously raised by the Defendants.

---

[3]The Defendants' motion papers do not indicate whether they were ever properly served with the Third Amended Complaint, nor do they discuss the propriety of filing a motion to dismiss at this stage.  However, the Court will not address these potential issues, as the procedural history in the case is uncommonly complicated and I find that it is in the interest of justice and judicial economy to determine the instant motion on the merits.

## FACTUAL BACKGROUND

This case involves the conflicting claims of two actions filed by the Plaintiff in this Court.  Accordingly, the Court must examine the facts of both cases to determine whether Plaintiff may proceed with any of the claims alleged in this case.

Plaintiff's complaints are lengthy and, at times, incomprehensible.  While Plaintiff sets forth some factual allegations, they are interlaced with repeated conclusory statements regarding the defendants conduct; which, according to the Plaintiff, involved *inter alia*, "domestic terrorist" activity, "prisoner of war tactics" and "kangaroo trials."  She also repeatedly compares the defendants in both cases to the Ku Klux Klan and the Nazis.  The Court has thoroughly reviewed both of the Complaints in an attempt to compare the actual factual allegations.  But, considering the nature of the submissions, a side-by-side comparison of the complaints is futile.[4]  The Court has, however, gleaned the following factual allegations from the complaints:

Plaintiff's *Axsmith* Complaint

(A) Axsmith Defendants

Plaintiff filed the Axsmith complaint in this Court on August

---

[4] While the Court does not dismiss the Third Amended Complaint for this reason, it is notable that, in applying the requirements of Rule 8 of the Federal Rules of Civil Procedure to complaints which contain too much detail, the Second Circuit has emphasized dismissal under Rule 8(a) is appropriate in "cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised[.]" Shomo v. New York, 374 Fed. Appx. 180, 182 (2d Cir. 2010)(internal quotations omitted).

8, 2001. In that action, she and her husband, Peter D. Jackson[5], alleged claims against many state and local law enforcement officials and judicial officers, including district attorneys and judges.  She specifically named as defendants the following individuals who are also named as defendants in this case: NYSP Superintendent James W. McMahon, NYSP officers Weston, Cerretto, and Coots, NYSP Troop E Commander, Major Mark Fischer, and many unknown Jane and John Doe NYSP troopers.  Whether named or unnamed, both complaints relate events in which many of the same individuals are alleged participants.

(B) <u>Axsmith</u> Allegations

Under a heading entitled "Nature of Suit," Plaintiff alleges that the Defendants have engaged in a "scorched earth" campaign against her, which has resulted in the denial of her constitutional rights and has caused her emotional and physical injury, and by which she has been denied medical treatment and "non-biased/non-prejudicial access to...law enforcement [and the] legal [and] judicial system."  She states that she was the victim of false arrests and malicious prosecutions and that the Defendants were "criminally targeting, victimizing and harassing" her and her husband.  She also states that the Defendants violated RICO.  At various locations in the complaint she states that she is seeking

---

[5]While Plaintiff's husband was a named plaintiff in <u>Axsmith</u>, it appears that most, if not all, of the allegations relate to the Plaintiff in this case only.

an "Order of Protection" preventing the Defendants from "any further felonious [and] unconstitutional reprisals, crimes, false arrests, unlawful incarcerations, State Police/Sheriff Deputies' violent brutality, battering, bruising, dragging, etc."

While not cogently or chronologically describing the facts, the Axsmith complaint relates the following events[6]:

(1) an arrest and prosecution for Aggravated Unlicenced Operation of a Motor Vehicle in the third Degree ("AUO 3rd") on or around November 30, 1998. Prior to her arrest, Plaintiff was parked in front of the NYSP Troop E barracks (apparently carrying a tape recorder to record any conduct of the law enforcement agents). After this arrest, Plaintiff states that she was "not handcuffed [and] her Miranda Rights were not read to her," but she was arraigned before Farmington Town Justice Charles R. Cooksey, who set bail at $500. Plaintiff could not afford bail and remained in Ontario County Jail for approximately three days. Plaintiff states that the district attorney and Judge Cooksey recommended a reduction in the charge, but she refused to accept the offer. She objected to the fact that a jury trial did not occur by refusing to attend the bench trial held on this charge, and she states that she "continues to strongly believe that if she appears at these bench trials Justice Cooksey, D.A. Tantillo [and] his A.D.A.s would

---

[6] The Axsmith Complaint is attached to Defendants' Motion to Dismiss as Exhibit 1A-G, as Plaintiff split her complaint into several subparts. At this stage, all of the facts are taken from the complaint and are accepted as true.

railroad her into a guilty conviction." Plaintiff's driver's licence was suspended in September 2000, apparently based on her failure to appear in court. From the Complaint in this action, it also appears that Justice Cooksey charged Plaintiff with Criminal Contempt for failing to appear in court, and sentenced her to 30 days in Ontario County Jail.

(2) an arrest for 4th degree criminal possession of a weapon in October 1999 while Plaintiff was at the Ontario County Courthouse. Plaintiff states that this was a "setup" and that the arresting officers lied during the trial for this offense, which apparently occurred in July 2000 before Canandaigua City Court Judge Stephen D. Aronson.

(3) an incident in May 2000 in which a Village of Wolcott police officer and NYSP officer Weston "trespassed on Plaintiffs' property" and "forcibly [and] violently conducted an [u]nconstitutional non-warranted armed home invasion/break in of Plaintiff's home." The officers were seeking to arrest Plaintiff's son.

(4) from April 2, 2000 to June 16, 2001, she was denied "justice/ a jury trial and was subject to unlawful incarcerations, false arrests, setup/frames, etc."

(5) a suspension of Plaintiff's driver's licence by Justice Patricia Axsmith in May or June 2001, based on her failure to appear in court;

10

(6) instances of possible excessive force on April 18, 2001 and April 30,2001 by the NYSP and possibly the Ontario County Sheriffs relating to her arrest for Criminal Contempt.

(7) an involuntary transport to the Hutchings Psychiatric Center on April 30, 2001 ordered by Justice Axsmith;

(C) <u>Dismissal of *Axsmith* Complaint</u>

One year after denying Plaintiffs' request for service by the U.S. Marshal, this court issued an Order to Show Cause why this case should not be dismissed for Plaintiffs' failure to prosecute pursuant to Rule 41(b). (Civil Docket 01-CV-6382, No. 3-4.)  The Court warned Plaintiffs that the case would be dismissed with prejudice if they failed to show good cause for the delay. Plaintiffs then filed a response to the order and several motions - for service by the US Marshal, to proceed *in forma pauperis* and for the appointment of counsel. District Judge David G. Larimer denied the motions and dismissed the <u>Axsmith</u> complaint, finding Plaintiffs' response insufficient and their motions moot. (Exhibit 2 to Def. Motion to Dismiss, Docket No. 168.) Plaintiffs appealed this Order, and the Second Circuit Court of Appeals dismissed the appeal and denied Plaintiffs' motions for *in forma pauperis* status and the assignment of counsel finding that the appeal "lack[ed] an arguable basis in law or in fact." (Civil Docket 01-CV-6382 No. 12.)

11

Complaint in this Action

In this Complaint, in approximately 54 pages of largely conclusory and argumentative verbiage, Plaintiff alleges twelve enumerated[7] cases of action against the NYSP defendants relating to the following factual events:

Beginning in 1993, Plaintiff and her neighbors engaged in a property dispute in which Plaintiff was, at one point, awarded an Order of Protection against her neighbors by a Conquest Town Justice.  Plaintiff complained to the NYSP on several occasions that her neighbors were not respecting the Order of Protection and that they had, inter alia, destroyed her shrubs and taken and killed her ducks.  The NYSP initially refused to intervene, but eventually Defendant NYSP Trooper Dennis Freeman interviewed the neighbors who admitted to stealing and killing the ducks.  Freeman did not make an arrest based on this information.  Plaintiff then attempted to file a formal complaint against her neighbors, but she was prevented from doing so by NYSP Sergeant Campbell (not a named defendant).

In March and April 1995, Plaintiff met with Defendant NYSP Captain Donald Swain on several occasions to discuss her complaints with the neighbors and the NYSP's lack of response and refusal to enforce the Order of Protection.  Defendant Swain asked Plaintiff

---

[7]The claims numbered "Three" (Conspiracy) and "Eleven" (RICO violations) were previously dismissed.

to sign a written statement regarding her complaint but she "did not sign NYSP Captain Swain's statement because her Miranda Rights were on the statement [and] the dates [and] facts were incorrect." She felt that the NYSP was attempting to "entrap" her by asking her to sign the statement.  She alleges that her complaints were never investigated and that following her meetings with Swain, "the NYSP employee's cruel, inhuman [and] debase, retaliatory attacks, kidnappings (a.k.a. false arrests), unlawful imprisonments [and the like] against Plaintiff, exponentially increased [and] became even more frequent, intense, violent [and] vicious." Compl. at ¶¶ 88-99.

Plaintiff attached to her complaint a document labeled "Exhibit 'A'", in which she describes the following false arrests, some of which led to prosecutions, which she also alleges were unlawful:[8]

(1) On August 16, 1994, Plaintiff was forcefully arrested by approximately 10 NYSP employees after being stopped in her car. Plaintiff was involuntarily transported to a psychiatric center where she was evaluated and found not to be suffering from any psychological disease. It is unclear from the complaint why Plaintiff was stopped, and it does not appear that any charges were

---

[8]At least one of these arrests (on September 11, 1993) did not involve the NYSP, and Plaintiff has not named any other law enforcement agency in this lawsuit.  Accordingly, to the extent that Plaintiff is seeking to bring claims with respect to an alleged unlawful arrest and/or prosecution that did not involve the defendants named in this lawsuit, any such claim is hereby dismissed.  The Court will only discuss the events in which the named defendants are alleged to have acted unlawfully.

filed in relation to this event.

(2) On September 11, 1994, Plaintiff was arrested for harassment based on a complaint filed by her neighbor. Plaintiff states that this charge was later dismissed "in the name of justice."

(3) On June 15, 1995, Plaintiff was again arrested for harassment based on a complaint filed by her neighbor, and she was also later charged with reckless endangerment, which appears to be related to the same incident. Both charges were dismissed on February 23, 1998.

(4) On February 20, 1997, Plaintiff was stopped and cited for speeding. The citations were later dismissed.

(5) On February 20, 1998, Plaintiff was arrested for harassment, based on a complaint by Plaintiff's "attacker/assailant." Plaintiff alleges that she was the actual victim, but the NYSP prevented her from making a complaint, and instead placed her under arrest. She alleges that the NYSP's co-conspirators, Wayne County Justice Lester Taber and a Wayne County assistant district attorney, held "an unconstitutional trial," that Plaintiff did not attend. Justice Taber granted Plaintiff a conditional discharge, but issued an Order of Protection in favor of Plaintiff's "attacker."

(6) On November 30, 1998, Plaintiff was arrested for AUO 3rd while she was picketing in front of the NYSP Troop E barracks. See

14

pg. 8-9 <u>supra</u> for additional details, alleged in both this complaint and the complaint in <u>Axsmith</u>.

(7) On June 10, 1999, Plaintiff was issued a ticket under New York Vehicle and Traffic Law Section 1202 (a parking violation), while she was "exercising one of her First Amendment inalienable rights of freedom of expression on Route 104," in Sodus, New York. She alleges that a "kangaroo trial" was held in her absence and she was fined $100. She alleges that Defendant Mowers committed perjury during the trial.

(8) On September 30, 1999, Plaintiff was issued three traffic tickets while driving in the town of Pittsford, New York. She alleges that "co-conspirator" Pittsford Town Court Justice Gallina, refused to dismiss the tickets and a trial was held at which Defendant Bosworth committed perjury. Plaintiff was found guilty of one of the three traffic violations, but the charge was conditionally discharged and Plaintiff was not fined.

(9) While not a false arrest, Plaintiff also alleges that on May 15, 2000, Defendant Weston unlawfully broke into her home.[9]

(10) On September 25, 2000, Plaintiff was stopped by Defendants Burdette and Klinkman and issued a ticket for driving to the left of pavement markings.

---

[9]The allegations relating to the May 15, 2000 "home invasion" were included in the <u>Axsmith</u> Complaint.

(11) On April 18, 2001[10], Plaintiff was arrested for Criminal Contempt. This arrest was allegedly related to her previous arrest on November 30, 1998 for AUO 3rd. She states that she suffered "police brutality, mental emotional psychological rape, trauma, terror, bruising to her arms [and] wrists, torture, assault, abuse, trauma and shock."

Town of Farmington Justice Patricia Axsmith allegedly yelled at the Plaintiff for having filed judicial misconduct complaints against Justice Cooksey.  Plaintiff was found to be carrying a tape recorder under her clothing and she was escorted out of the courtroom with force, and placed in a "suicide suit." She alleges that she suffered injury to her wrists and arms during this arrest. She was then taken to a "high security isolated medical area where she [was] left until April 22, 2001."  Plaintiff alleges that she was in a catatonic state during this time.  Justice Axsmith dismissed the Criminal Contempt charge and ordered that Plaintiff be evaluated at the Hutching's Psychiatric Center in Syracuse, New York.  She was transported there on April 30, 2001 and found not to be suffering from any mental disorder.

(12) On May 31, 2001, Plaintiff was allegedly arrested for Criminal Contempt and Resisting Arrest and forcefully removed from her vehicle, causing injury to her arm and breaking her car window.

---

[10]The allegations relating to the events in April 2001 were included in Plaintiff's Axsmith Complaint, albeit in less detail.

Plaintiff states that the charge "was a retaliatory charge" for the April 2001 events and that both charges related to the April 18, 2001 incident.

(13) On July 21, 2001, Plaintiff was charged with possession of a forged instrument for allegedly forging a notice of appearance relating to the her appearances in court before Judge Axsmith, for the purpose of obtaining a driver's license. Plaintiff alleges that a Monroe County Grand Jury "dismissed" this charge.

## DISCUSSION

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim will be considered plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009). Although a *pro se* complaint must contain sufficient factual allegations to meet the plausibility standard, it is held to less stringent standards than pleadings drafted by lawyers, see Erickson v. Pardus, 551 U.S. 89, 94 (2007), and the court is obliged to construe plaintiff's pleadings liberally and interpret them as raising the strongest arguments they suggest. See Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir.1994).

17

I.   <u>Res Judicata</u>

Defendants first argue that many, if not all, of Plaintiff's claims should be dismissed on the basis of res judicata, as she raised many of the same claims and presented many of the same facts against many of the same defendants in the <u>Axsmith</u> case. Defendants argue that the facts, while consisting of several different events (some alleged in both cases, some alleged in one or the other), arise out of "common nucleus of operative fact," as the underlying theory for relief in both actions was "a conspiracy amongst NYSP, a host of court and law enforcement personnel, and myriad other officials [from] various counties, to deprive Plaintiff of her civil rights" by subjecting her to allegedly unlawful retaliation in the form of, *inter alia*, false arrests and unlawful prosecutions.  Def. Mem. of Law at 14.

To determine whether the doctrine of res judicata applies to preclude litigation, the Court must determine whether the judgment in the previous action was: "(1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." <u>Stephenson v. Dow Chemical Co.</u>, 273 F.3d 249 (2nd Cir. 2001)(citing <u>Anaconda-Ericsson Inc. v. Hessen (In re Teltronics Servs., Inc.</u>, 762 F.2d 185, 190 (2d Cir., 1985)). As noted above, Plaintiff's complaint in <u>Axsmith</u> was dismissed pursuant to Rule 41(b), which "[u]nless the dismissal states otherwise...operates as

an adjudication on the merits." Fed. R. Civ. P. 41(b).  The dismissal did not state otherwise, and Plaintiff was specifically warned that her case would be dismissed with prejudice if she did not show good cause for her failure to prosecute. Accordingly, the Rule 41(b) dismissal was an adjudication on the merits.

Further, Plaintiff's complaint in <u>Axsmith</u> raised claims against the NYSP and NYSP divisions and officers (several of whom are also specifically named in this suit) and many unidentified NYSP officers.  Res judicata bars the assertion of the same causes of action against the defendants that were specifically named in both lawsuits.  Further, the relationship of the NYSP defendants named in the <u>Axsmith</u> suit and those named only in this lawsuit is sufficiently close for this Court to find that the "the principle of privity bars relitigation of the same cause of action against [the] new defendant[s]." <u>See</u> <u>Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.</u>, 56 F.3d 359, 367-8 (2d Cir. 1995).  All of the named defendants in this action (while perhaps not known by name) were known to the Plaintiff at the time of the filing of the <u>Axsmith</u> case as NYSP officers who were allegedly engaging in a pattern of unlawful conduct as a group.  The NYSP defendants in both actions are members of the same organization, and many are presumably members of the same division, Troop E.  NYSP Troop E is named in this lawsuit, and its Commander, Mark Fischer, is named and identified as the Commander of Troop E in both suits.  Further,

Plaintiff names Jane and John Doe state troopers in both lawsuits. Accordingly, the Court finds that the defendants in both actions are in privity with one another such that the claims that were asserted in Axsmith are now barred by the doctrine of res judicata.

The following identical events (while alleged in more or less detail in either suit) are alleged in both complaints (1) Plaintiff's arrest for AUO 3rd, (2) subsequent arrests for Criminal Contempt, (3) the involuntary transfer to the Hutchings Psychiatric Center, and (4) the May 2000 entry of Defendant Weston into her home.  Therefore, any claims based on these factual events are barred by res judicata.  See Waldman v. Village of Kiryas Joel, 207 F.3d 105, 110-111 (2d Cir. 2000)("plaintiff cannot avoid the effects of res judicata by 'splitting' his claim into various suits, based on different legal theories (with different evidence 'necessary' to each suit)").

Next, the Court must decide whether the remaining claims are sufficiently related such that they arise from the same "nucleus of operative fact," and are therefore barred by res judicata. Id. at 108 ("Res judicata...makes a final, valid judgment conclusive on the parties, and those in privity with them, as to all matters, fact and law, [that] were or should have been adjudicated in the proceeding.")  Two claims are one for the purposes of res judicata if they are based on the same, or nearly the same, factual allegations such that they may reasonably be considered to

constitute "a single transaction or a connected series of transactions." Id. (quoting Interoceanica Corp. v. Sound Pilots, Inc., 107 F.3d 86, 91 (2d Cir. 1997)). In deciding this issue, the Court considers such factors as whether the facts are related in time, space, origin, or motivation; whether they form a convenient trial unit; and whether their treatment as a unit conforms to the parties' expectations. See Id. at 108; see also Interoceanica, 107 F.3d at 90; Teltronics 762 F.2d at 193 (res judicata barred second action where "all the facts necessary to support the claims... were pleaded, or could have been pleaded, in the first action.").

Plaintiff's remaining allegations can be viewed from two perspectives - (1) as a series of unlawful reprisals against the Plaintiff originating from the same organization with the shared intention of harassing and threatening the Plaintiff in response to confrontations that occurred with her for more than ten years; or (2) as separate instances of misconduct that, while numerous, are not related in time, space, origin or motivation - each involving different individuals, with different motivations.  If viewed from the first perspective, it would seem that Plaintiff's allegations may be barred by the doctrine of res judicata, as they consist of a series of connected events - some of which were pleaded in the first action and others which could have been pleaded in the first action - all occuring prior to the filing of the first action.   In contrast, if viewed from the perspective that each event involved

21

different individuals, at different times, motivated for different reasons, many of the allegations would not be barred by res judicata.

Viewing Plaintiffs complaint as a whole, the Court finds that it is more reasonable to view the events alleged in the complaint as separate instances of misconduct, because each factual event alleged occurred under vastly different circumstances. The arrests and/or issuances of traffic citations were effectuated by different individuals at different times for different reasons.  For example, the arrests based on the complaints of her neighbors cannot reasonably be compared to the traffic citations she received for speeding or the parking violation that was issued while she was protesting outside of the NYPS barracks.   Further, the alleged arrests and/or traffic stops and the alleged prosecutions occurred in different towns and rarely involved similar charges.

Accordingly, the Court does not find that it is appropriate to consider these events as a single transaction or series of transactions.   The Court notes that Plaintiff's allegations that these arrests were connected in that they represent a pattern of reprisals by the NYSP are conclusory, and are not supported by the record.   Plaintiff's claims for any coordinated conduct were dismissed more than once, and Plaintiff has not alleged how any of these events are connected factually.   For example, Plaintiff has not alleged that the same officers were party to several similar

22

arrests for similar lawful conduct. The Court also notes that
several of Plaintiff's allegations of unlawful conduct, even read
in the light most favorable to the Plaintiff, are instances of
individuals acting with the motivation of helping the Plaintiff -
for example, courts attempting to lower charges or dismissing
charges in the interests of justice without a trial. Accordingly,
it is hard to reason that all of the actions of the defendants and
their alleged "co-conspirators" were part of a larger plot to
violate the Plaintiff's constitutional rights.

The only factual events which were not specifically asserted
in the <u>Axsmith</u> action, but which are sufficiently related so as to
constitute part of the same series of transactions are (1) the July
21, 2001 arrest in which Plaintiff was charged with possession of
a forged instrument for forging a notice of appearance relating to
the her appearances in court before Justice Axsmith, for the
purpose of obtaining a driver's license; and (2) the May 31, 2001,
arrest for Criminal Contempt and Resisting Arrest which stemmed
from her previous arrest for Criminal Contempt on April 18, 2001.
In both complaints plaintiff details her objections to Farmington
Town Court Justices Axsmith and Cooksey having suspended her
driver's licence for not appearing in court. She also alleges that
the suspension was unlawful and that she made efforts to have her
license reinstated. One of these efforts led to her arrest for
allegedly forging a notice of appearance and giving it to the

23

Department of Motor Vehicles.  Plaintiff could have, and should have, raised this issue in the first lawsuit, having filed the suit within a month of this arrest in August 2001. Accordingly, the Court finds that this factual event is part of the same claim or series of claims that were alleged in <u>Axsmith</u>.

Also, in both Complaints, Plaintiff details her arrest for Criminal Contempt on April 18, 2001 and the events which ensued afterward, which were connected to the April 2001 arrest.  The second arrest for Criminal Contempt, as Plaintiff alleges, was connected to or arose out of the first arrest.  And, as Plaintiff was aware of each instance she could have, and should have, asserted these factual allegations to support her claims of unlawful conduct in <u>Axsmith</u>.

The Court also emphasizes the proximity in time between both events and the April 2001 events which form the crux of the complaint in <u>Axsmith</u>, and that Plaintiff filed this lawsuit just months after all of these related events occurred.  It is not unreasonable, therefore, to require her to have brought all of these allegations in <u>Axsmith</u>.  The Court finds that these factual circumstances are related in time, space, origin, and motivation, they would form a convenient trial unit, and their treatment as a unit conforms to the parties' expectations.  Therefore, they are barred by res judicata.

II.   Statute of Limitations

Defendants also argue that most of Plaintiff's claims are barred by the statue of limitations, having occurred more than three years[11] before Plaintiff filed this Complaint on May 9, 2003. This issue was addressed previously by Judge Munson in his decision partially denying Defendants' motion to dismiss the Second Amended Complaint.  Jackson v. New York State, 381 F.Supp.2d 80 (N.D.N.Y. 2005).   "The law of the case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." DiLaura v. Power Authority of State of N.Y., 138 P.U.R. 4th 620, 92 F.3d 73, 76 (2d Cir. 1992)(citations omitted).   However, while Courts are understandably reluctant to revisit issues previously decided, particularly those decided by other courts or other judges, the doctrine does not limit the court's authority to do so. Id. (citing Virgin Atl. Airways v. National Mediation Bd., 956 F.2d 1245, 1255 (2d Cir.), cert. denied, 506 U.S. 820, 113 S.Ct. 67, 121 L.Ed.2d 34 (1992)).  "[T]he major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" Id. (quoting Virgin, 956 F.2d at 1255).

Here, the Court finds that it is prudent to revisit the

---

[11]The statute of limitations for claims arising under 42 U.S.C. § 1983 in New York is three years. See Owens v. Okure, 488 U.S. 235 (1989). Several of Plaintiff's state law claims are subject to a one year statute of limitations. N.Y. C.P.L.R § 215.

decision of the Northern District of New York on the applicability of the continuing violation doctrine for several reasons.  First, Judge Munson's application of the doctrine to the specific facts alleged in the complaint is minimal.  Judge Munson spent most of the discussion of the doctrine determining whether it applied to cases brought under 42 U.S.C. § 1983, rather than discussing the facts as alleged.  Further, the Northern District transferred the case to this Court, in part, because it found that this Court would be better able to consider the effect of the <u>Axsmith</u> Complaint on this action.  Having considered the doctrine of res judicata, the Court now finds it necessary to revisit the issue of whether the continuing violation doctrine applies to this case, as the analysis of whether the facts are sufficiently similar to warrant dismissal for purposes of res judicata must be reconciled with the analysis of whether the facts, as presented, may constitute a continuing violation to overcome the statute of limitations.  For these reasons, the Court finds that justice requires revisiting the decision of the Northern District of New York with respect to the continuing violation doctrine.

"Under the continuing violation doctrine, a timely charge with respect to a constitutional violation in furtherance of an infirm policy renders claims against other unlawful actions 'taken pursuant to that policy timely, even if they would be untimely if standing alone.'" <u>Cotz v. Mastroeni</u>, 476 F.Supp.2d 332, 356

26

(S.D.N.Y. 2007)(quoting <u>Conn. Light & Power Co. v. Sec'y of U.S. Dep't of Labor</u>, 85 F.3d 89, 96 (2d Cir.1996)).  In this Circuit, the doctrine is disfavored, and allegations of multiple instances of unlawful conduct, even if similar, do not, by themselves implicate the doctrine. <u>Id</u>. (citing <u>Lambert v. Genesee Hosp.</u>, 10 F.3d 46, 52 (2d Cir.1993), cert. denied, 511 U.S. 1052, 114 S.Ct. 1612, 128 L.Ed.2d 339 (1994)).  "A continuing violation exists where there is a relationship between a series of discriminatory actions and an invalid, underlying policy." <u>Conn. Light & Power Co.</u>, 85 F.3d at 96.

Here, the factual allegations relate approximately 13 instances of alleged unlawful conduct.  Not only are the events remarkably different from one another - occurring at different times, under different circumstances and involving different individuals - Plaintiff does not allege a non-conclusory factual connection between these separate instances of alleged misconduct. Further, as the Court has already pointed out, Plaintiff's allegations of a coordinated effort by the NYPS to "terrorize" and "harass" her, are conclusory, at best.  Other than the allegations that the arrests, vehicle stops, and prosecutions occurred and were "unlawful" or "illegal," there are no allegations of fact that would seemingly connect any of the alleged events to each other or to an underlying, and invalid policy of the NYSP. <u>See</u> <u>Harper v. City of New York</u>, 424 Fed. Appx. 36, 2011 WL 2199973 (2d Cir. 2011)

(use of conclusory words such as "cooperation" or "pattern" insufficient to allege an unlawful policy underlying 6 separate arrests).

In a case remarkably similar to the case at bar, the Southern District of New York found that the continuing violation doctrine did not apply to allegations of "varied police activity: (1) occurring over the course of fifteen years; (2) undertaken by several different officers; (3) occurring under the supervision of different town and department administrators; (4) involving vastly different circumstances; and (5) carried out pursuant to distinct policies or customs." See Cotz v. Mastroeni, 476 F.Supp.2d 332 (S.D.N.Y. 2007). There, the plaintiff, like the Plaintiff in this case, alleged various incidents with police officers, including police involvement in domestic matters and matters with her neighbors, various traffic stops, a strip search, police involvement in issues regarding her property upkeep, and unlawful removal from a polling station. Because the plaintiff did not allege a common policy under which all the actions were carried out, the continuing violation doctrine did not apply. Similarly, Plaintiff has not alleged a plausible, non-conclusory policy pursuant to which the NYSP acted to violate her constitutional rights. Accordingly, the continuing violation doctrine does not apply to this case.

Thus, Plaintiff is foreclosed from bringing claims related to

28

events that occurred prior to May 9, 2000.  The majority of Plaintiff's complaint relates to events that occurred prior to May 9, 2000, and most of the events that occurred subsequently were raised in the Axsmith case and are now barred by the doctrine of res judicata.

A review of the Third Amended Complaint reveals only the following action that is neither time barred nor barred by res judicata:  On September 25, 2000, Plaintiff was stopped by Defendants Burdette and Klinkman and issued a ticket for driving to the left of pavement markings.  (Plaintiff's Exhibit A at C-14.) While Plaintiff conclusively alleges that the Defendants unlawfully stopped her on this occasion, she fails to allege any non-conclusory facts in support of this allegation. See Ashcroft v. Iqbal, 556 U.S. 662 (2009)("the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' (internal citations omitted).

Other than the fact that the stop occurred and the fact that Plaintiff believes the stop was part of a larger plot to "victimize" her, she does not allege any non-conclusory facts to

suggest that the stop was anything other than lawful. <u>People v.</u>
<u>Mestey</u>, 61 A.D.2d 447 (1st Dept. 1978)(citing <u>People v. Ingle</u>, 36
N.Y.2d 413, 369 N.Y.S.2d 67, 330 N.E.2d 39)(explaining that
probable cause is not required for a routine traffic stop on a
public highway, all that is required is a reasonable suspicion that
the suspect has violated the Vehicle and Traffic law)).  For
instance, Plaintiff does not allege facts that would suggest that
she was obeying the vehicle and traffic laws and that the officers
lacked a reasonable suspicion to stop her; she does not allege what
occurred during the traffic stop that cause her to be "victimized";
nor does she allege what facts would connect this traffic stop to
any other action of the officers who stopped her or other NYSP
officers that could plausibly suggest that this stop was part of a
plot to harass her. See <u>Jackson v. County of Rockland</u>, No. 10-3968-
pr, 2011 WL 5868404 (2d Cir. November 23, 2011)(dismissing
complaint of *pro se* litigant who alleged claims of false arrest
pursuant to a conspiracy of various law enforcement agencies where
plaintiff did not allege facts in support of her conclusory
allegations that and arrest was predicated on falsified evidence
and documents).

There are simply no non-conclusory facts to plausibly suggest
that the stop was unreasonable as that term is understood under the
Fourth Amendment to the United States Constitution.  Therefore, the
Court finds that Plaintiff has not plausibly alleged a

constitutional or state law violation with respect to this stop.

## CONCLUSION

Having found that most of Plaintiffs claims are either barred by res judicata or the statute of limitations; and having found that Plaintiff failed to plausibly allege a claim to relief based on the September 25, 2000 stop, the Court hereby grants Defendants' Motion to Dismiss Plaintiff's Complaint. Accordingly, this case is hereby dismissed with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**

<u>    s/Michael A. Telesca    </u>
Michael A. Telesca
United States District Judge

DATED: Rochester, New York
       March 6, 2012